No. 24-2638

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

ALI RAZAK, et al.,

*Plaintiffs-Appellants,*

v.

UBER TECHNOLOGIES, INC., et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 2:16-cv-00573
Honorable Michael M. Baylson

**BRIEF OF *AMICUS CURIAE* THE COMMONWEALTH OF
PENNSYLVANIA IN SUPPORT OF PLAINTIFFS-APPELLANTS**

MICHELLE A. HENRY
Attorney General
Commonwealth of Pennsylvania

ELIZABETH SCHNEIDER
Chief Deputy Attorney General

RYAN W. SYPNIEWSKI
Deputy Attorney General
KRISTEN M. BENTZ
Deputy Attorney General
Pennsylvania Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(215) 560-1260
eschneider@attorneygeneral.gov

January 10, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF INTEREST ...................................................................1

BACKGROUND ......................................................................................2

SUMMARY OF ARGUMENT ..................................................................4

ARGUMENT ...........................................................................................6

I. Comity and judicial federalism instruct that where questions of
Pennsylvania law exist, federal courts should give deference to
the decisions of Pennsylvania's highest court ................................6

II. The different histories, objectives, and language of the PMWA
and the FLSA require that the PMWA be interpreted differently .................9

A. A brief history of the FLSA and the PMWA .............................9

B. The objective of the PMWA was to provide broader
minimum wage and overtime protections than that of the
FLSA ...................................................................................11

C. The "materially distinct" language in the PMWA has led the
Pennsylvania Supreme Court to interpret the PMWA
differently than the FLSA .....................................................13

III. Current precedent of the Supreme Court of Pennsylvania cannot
be reconciled with the economic reality test ...............................16

A. The Supreme Court of Pennsylvania concluded the PMWA
has a presumption of employment not found in the FLSA ......................16

B. The FLSA's economic reality test does not comport with the
PMWA's presumption of employment ...................................19

IV. This Court should certify the unsettled question concerning the
proper classification standard under the PMWA to the
Pennsylvania Supreme Court.....................................................24

CONCLUSION .....................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Bayada Nurses, Inc. v. Pa. Dep't of Lab. & Indus.*, 8 A.3d 866 (Pa. 2010) ...........................................................................................................12

*Bond v. U.S.*, 564 U.S. 211 (2011)..................................................................7

*Bond v. U.S.*, 572 U.S. 844 (2014)..................................................................7

*Chevalier v. Gen. Nutrition Centers, Inc.,* 220 A.3d 1038 (Pa. 2019) ........... passim

*City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002) ...........................................................................................................6

*Clews v. Cnty. of Schuylkill*, 12 F.4th 353 (3d Cir. 2021) ......................................23

*Commw. v. Tilghman,* 673 A.2d 898 (Pa. 1996)......................................................14

*Donovan v. DialAmerica Marketing, Inc.,* 757 F.2d 1376 (3d Cir. 1985) ...........................................................................................................20

*Glatt v. Fox Searchlight Pictures, Inc.,* 811 F.3d 528 (2d Cir. 2016) ....................21

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)................................................................7

*Heimbach v. Amazon.com., Inc.,* 255 A.3d 191 (Pa. 2021)....................... 13, 15, 19

*Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014)..................................9

*Krauss v. Greenbarg*, 137 F.2d 569 (3d Cir. 1943)..................................................6

*Lowman v. Unemployment Comp. Bd. of Rev.,* 235 A.3d 278 (Pa. 2020) ...........................................................................................................21

*McKenna v. Pacific Rail Service*, 32 F.3d 820 (3d Cir. 1994) ...........................6, 18

*New York v. U.S.*, 505 U.S. 144 (1992) ....................................................................7

*Pa. Dep't of Lab. & Indus. v. Stuber,* 822 A.2d 870 (Pa. Cmwlth. 2003), *aff'd* 859 A.2d 1253 (Pa. 2004)...............................................................14

*Pacific Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990) ................................................................................12

*Razak v. Uber Techs, Inc.,* 2024 WL 2831805 (E.D. Pa. June 4, 2024) .......... 16, 18

*Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947)......................................20

*State Farm Mut. Auto. Ins. Co. v. Coviello*, 233 F.3d 710 (3d Cir. 2000) ..............................................................................6

*United States v. Defreitas*, 29 F.4th 135 (3d Cir. 2022) ........................................26

*Verderame v. Radioshack Corp.*, 31 F. Supp. 3d 702 (E.D. Pa. 2014) ...................12

*Walling v. Portland Terminal Co.,* 330 U.S. 148 (1947)........................................20

**Statutes**

26 U.S.C. § 1367(c) ..................................................................................................8

29 U.S.C. § 201 ........................................................................................................4

29 U.S.C. § 202(a) ....................................................................................................9

29 U.S.C. § 203 .................................................................................................. 10, 11

29 U.S.C. § 218(a) ..................................................................................................12

42 Pa.C.S. § 5103(b) ................................................................................................8

43 P.S. § 260.1 ....................................................................................................1, 13

43 P.S. § 333.101 ............................................................................................ 1, 4, 10

43 P.S. § 333.103 .............................................................................................. 10, 11

43 P.S. § 753(I)(2)(B) .............................................................................................21

43 P.S. § 933.3(a)(1)-(3) .........................................................................................22

71 P.S. § 732-204 ....................................................................................................1

Act of Dec. 15, 1988, Pub. L. 1232 (codified at 43 P.S. § 333.104).......................12

Act of July 9, 2006, Pub. L. 1077 (codified at 43 P.S. § 333.104)..........................12

## Other Authorities

Brief of Intervenor-Respondent Pa. Dep't of Lab. & Indus., *Babich Plumbing v. Pa. Prevailing Wage Appeals Bd.* (Pa. Cmwlth.) (No. 476 C.D. 2008), 2008 WL 7119878 .................................................................18

Christopher Hallock, Deputy Sec'y, Pa. Dep't of Lab. & Indus., Written Testimony, Pa. House Lab. & Indus. Comm., Hearing on Worker Misclassification (June 11, 2024) (available at https://tinyurl.com/2j5c6khw)..............................................................22

*Final Report, Joint Task Force on Misclassification of Employees*, Pa. Dep't of Lab. & Indus., 12 (Dec. 1, 2022), https://tinyurl.com/2vbek7jn..................................................................2

H.B. 2411, 208th Gen. Assemb., Reg. Sess. (Pa. 2024).........................................22

John Schmitt, et al., *The economic costs of worker misclassification*, Econ. Pol'y Inst. (Jan. 25, 2023), https://tinyurl.com/54r87phv ..........................3

Ken Jacobs, et al., *The Public Cost of Low-Wage Jobs in the US Construction Industry,* UC Berkeley Lab. Ctr. (Jan. 10, 2022), https://tinyurl.com/5dzykdna ..................................................................2

Lynn Rhinehart, et al., *Misclassification, the ABC test, and employee status*, Econ. Pol'y Inst. (June 16, 2021), https://tinyurl.com/mrx2ashs ................................................................2

The Federalist No. 39 (James Madison) ...................................................................7

The Federalist No. 78 (Alexander Hamilton) ...........................................................7

## Rules

3d Cir. L.A.R. Misc. 110.1 .....................................................................................24

Pa. R. App. P. 3341(a) ............................................................................................24

Pa. R. App. P. 3341(c) ............................................................................................24

## Regulations

*Employee or Independent Contractor Classification Under the Fair Labor Standards Act*, 89 Fed. Reg. 1638 (Jan. 10, 2024) ........................... 20, 21

U.S. Dep't of Labor, *WHD Fact Sheet # 71: Internship Programs Under the Fair Labor Standards Act* (April 2010)............................................20

**Constitutional Provisions**

Pa. Const. art. IV § 4.1 ................................................................................1

## STATEMENT OF INTEREST

The Commonwealth of Pennsylvania respectfully submits this *amicus* brief in support of Plaintiffs-Appellants pursuant to Federal Rule of Appellate Procedure 29(a)(2).

As the chief law officer for the Commonwealth of Pennsylvania, the Attorney General is charged with defending the constitutionality of Commonwealth statutes. Pa. Const. art. IV § 4.1; 71 P.S. § 732-204. The Attorney General also acts as *parens patriae*, the ultimate guardian protecting the interests of the citizens of Pennsylvania. In these capacities, the Attorney General is tasked with ensuring the proper interpretation and application of the laws of the Commonwealth, including the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101-333.115 ("PMWA"), and the Wage Payment and Collection Law of 1961, 43 P.S. §§ 260.1-260.45 ("WPCL").

The Commonwealth has a strong interest in ensuring that no Pennsylvania worker is unlawfully misclassified under Pennsylvania law, in order to guarantee that all individuals entitled to minimum wage, overtime, unemployment and workers' compensation benefits are not unjustly denied their legal rights under state law. Because this case raises questions of Pennsylvania's wage and hour law, the Commonwealth has an interest in ensuring the federal courts properly interpret those statutes that are at issue in this appeal. The relevant federal and state laws

carry differing levels of protection for workers, and the misapplication of these laws could result in the deprivation of Pennsylvania workers' rights.

## BACKGROUND

An employee that is unlawfully misclassified as an independent contractor is denied virtually all legal worker protections, including a guaranteed minimum wage and overtime compensation, the right to organize, Social Security and Medicare benefits, anti-discrimination remedies, workers' compensation benefits, and paid leave options, all of which are predicated upon their status as an employee. Law-abiding employers also suffer economic harm when they are unable to compete with employers who misclassify their workers. Numerous studies show that worker misclassification is a significant and pervasive problem that deprives both workers and governments of billions of dollars in unpaid wages and taxes, respectively, on an annual basis.[1] Specifically, worker misclassification results in states suffering losses in uncollected payroll tax revenue, as well as a loss of funds to unemployment insurance, workers' compensation, and paid leave programs.[2] Misclassified individuals deprived of the various workplace benefits

---

[1] Lynn Rhinehart, et al., *Misclassification, the ABC test, and employee status*, Econ. Pol'y Inst. (June 16, 2021), https://tinyurl.com/mrx2ashs; Ken Jacobs, et al., *The Public Cost of Low-Wage Jobs in the US Construction Industry,* UC Berkeley Lab. Ctr. (Jan. 10, 2022), https://tinyurl.com/5dzykdna.

[2] *Final Report, Joint Task Force on Misclassification of Employees*, Pa. Dep't of Lab. & Indus., 12 (Dec. 1, 2022), https://tinyurl.com/2vbek7jn ($91,000,000.00 annual lost revenue to Pennsylvania's Unemployment Compensation Trust Fund

often turn to government funded assistance programs, further encumbering federal, state and local governments.[3] As the labor market and gig- or platform-economies continue to evolve, occupations are becoming more demographically segregated, where the types of jobs most frequently subject to misclassification are made up of the most vulnerable populations, including immigrant workers and people of color.[4]

Pennsylvania's labor and employment laws are inherently designed to level the playing field between employer and employee, given workers' diminished bargaining power. These laws are not meant to govern contractual relationships between savvy independent business owners and their clients. Yet, there exists economic incentive for employers to misclassify workers as independent business people, to circumvent the very laws aimed at protecting workers from unfair wages, poor or unsafe working conditions, and other legal entitlements. Misclassification in the labor market is also often concealed under the guise of "worker choice" and "freedom to contract." In passing the PMWA, Pennsylvania's legislature confronted this fiction, stating "employe[e]s are not as a class on a level

---

due to misclassification; $153,365,895.20 estimated losses to misclassified employees suffering occupational injury or illness without workers' compensation insurance in 2021).

[3] Jacobs, *supra* note 1.

[4] John Schmitt, et al., *The economic costs of worker misclassification,* Econ. Pol'y Inst. (Jan. 25, 2023), https://tinyurl.com/54r87phv.

of equality in bargaining with their employers . . . and 'freedom of contract' as applied to their relations with their employers is illusory." 43 P.S. § 333.101.

It is of paramount importance that Pennsylvania's labor and employment laws are afforded their fullest interpretation in order to effectuate the objectives that Pennsylvania's lawmakers intended.

## SUMMARY OF ARGUMENT

The Commonwealth addresses only the issue concerning the proper application of the state laws raised in this litigation. To begin, the District Court imposed its own interpretation of Pennsylvania law in contravention of the construction and application provided by Pennsylvania's highest court, infringing on the boundaries of federalism. The Supreme Court of Pennsylvania repeatedly recognized that because of their different histories and objectives, and the "materially distinct" language contained therein, Pennsylvania's wage and hour laws must be interpreted differently than their federal counterpart, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

Because of differences between the PMWA and the FLSA, the issue of employee or independent contractor classification should turn on Pennsylvania law employment standards that significantly diverge from—and are discordant with— the federal economic reality test implemented under the FLSA. Where Pennsylvania and federal laws differ, Pennsylvania's law often offers more

protections for its workers than the FLSA. Given the difference in histories and objectives, and the more protective nature of Pennsylvania's laws, considering the state and federal claims together under one, parallel standard erroneously deprives workers of rights vested in Pennsylvania labor and employment laws.

The Pennsylvania Supreme Court determined that there is a statutory presumption of employment under the PMWA, which shifts the burden to the employer to overcome that presumption. This presumption of employment is not contemplated by the FLSA or the economic reality test. This is clear when one examines the federal regulations, and considers other Pennsylvania laws that institute a presumption of employment and shift the burden to the employer with a select few factors to be considered. Federal courts analyzing PMWA claims should therefore be guided by Pennsylvania law, and not by the economic reality test.

Notwithstanding the above, this Court should avoid any speculation about how the Pennsylvania Supreme Court would resolve questions concerning the PMWA's statutory presumption and what the proper independent contractor analysis should be. Because of the friction between the economic reality test and Pennsylvania's presumption of employment, together with the recent line of Pennsylvania Supreme Court cases identifying differences between the PMWA and FLSA, this Court should vacate the lower court's decision regarding the state law claims (allowing Plaintiffs-Appellants to pursue their state law claims in state

court) or petition the Pennsylvania Supreme Court for certification of the unsettled

questions of state law that are at the heart of this appeal.

## ARGUMENT

I.   **Comity and judicial federalism instruct that where questions of Pennsylvania law exist, federal courts should give deference to the decisions of Pennsylvania's highest court**

It is well-established that when federal courts ascertain Pennsylvania law,

the decisions of the Supreme Court of Pennsylvania are the authoritative source.

*State Farm Mut. Auto. Ins. Co. v. Coviello*, 233 F.3d 710, 713 (3d Cir. 2000). This

Court has long instructed that it is the "duty" of federal courts "to apply state law

as [they] find it in the state decisions irrespective of what [they] may regard as its

merits." *Krauss v. Greenbarg*, 137 F.2d 569, 571 (3d Cir. 1943). When applying

state law, federal courts are neither free to impose their own view of what state law

should be, *McKenna v. Pacific Rail Service*, 32 F.3d 820, 825 (3d Cir. 1994), nor

are they able to expand or narrow state laws in ways not foreshadowed by state

court precedent, *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421

(3d Cir. 2002) (citing *Camden County Board of Chosen Freeholders v. Beretta*,

*U.S.A.*, 273 F.3d 536 (3d Cir. 2001)). Federal courts are obligated "to apply state

law as interpreted by the state's highest court." *McKenna*, 32 F.3d at 825.

This recognized interpretive framework between federal and state courts

arises out of the "dual sovereignty" of our Nation's governments. *Gregory v.*

*Ashcroft*, 501 U.S. 452, 457 (1991). In creating our United States, the union was born in compromise. The States, through our federal Constitution, created one united sovereignty, granting it certain limited enumerated powers while retaining a residuary and inviolable sovereignty for themselves. The Federalist No. 39 (James Madison). These principles form what we understand to be "federalism"–a division and sharing of power between the federal and state governments. *Bond v. U.S.*, 572 U.S. 844, 857-58 (2014). However, federalism is more than a boundary between our federal and state institutions of government. As the Supreme Court explained, "federalism secures to citizens the liberties that derive from the diffusion of sovereign power." *Bond v. U.S.*, 564 U.S. 211, 221 (2011) (quoting *New York v. U.S.,* 505 U.S. 144, 181 (1992)).

Each State has the right to enact laws that best suit its unique needs and circumstances. Federal courts should not interfere with this autonomy, absent a clear constitutional violation. The Federalist No. 78 (Alexander Hamilton). The States' retained sovereignty is undermined if a federal court can dismiss a State's interest through inaccurate interpretation or application of that State's law. The District Court's decision below is an example of this—undermining (perhaps unintentionally) Pennsylvania's sovereignty over its own laws.

As discussed in Section III *infra,* the Supreme Court of Pennsylvania determined that there is a presumption of an employment relationship under the

7

PMWA that an employer must rebut. Yet, in this case, the District Court flatly rejected the Pennsylvania Supreme Court's determination, and incorrectly instructed two separate juries that the PMWA and the FLSA operate under an identical economic reality standard.[5] Both trials ended with juries unable to reach a decision. Rather than hold a third jury trial or permit Plaintiffs-Appellants to pursue their state law claims in state court, the District Court dismissed both the federal and state claims with prejudice—strong medicine when a more equitable alternative was available. Had the District Court properly recognized the difference in state law, it could have dismissed the federal law claims—the claims over which the Court had original jurisdiction—and declined to exercise supplemental jurisdiction over the state law claims. 26 U.S.C. § 1367(c). In doing so, the Court could have given Plaintiffs-Appellants the opportunity to bring their state claims in state court. *Id.* § 1367(d). *See also*, 42 Pa.C.S. § 5103(b) ("Where a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth . . .").

The District Court's handling of the PMWA claims, and its ultimate decision to dismiss those claims, is inconsistent with the principles of federalism. The

---

[5] App. Index 490 (3/8 Trial Tr. 93:5–22), 1048 (6/17 Trial Tr. 109:12–111:24).

District Court misapplied the law, and substituted its own view of the merits of the law for the judgments made by Pennsylvania's highest court concerning that same law. Conflicting interpretations of state law between state courts and federal courts yield untenable outcomes, creating situations where individuals denied relief in one court can jump to the other in pursuit of a more favorable outcome. The District Court's decision as to the state law claims should be vacated, and the Plaintiffs-Appellants permitted to pursue their state law claims in state court. Alternatively, the unresolved questions of state law should be certified to the Supreme Court of Pennsylvania.

## II.    The different histories, objectives, and language of the PMWA and the FLSA require that the PMWA be interpreted differently

### A. A brief history of the FLSA and the PMWA

In 1938, in the midst of the Great Depression, and as part of President Franklin D. Roosevelt's New Deal, Congress passed the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To that end, the FLSA "established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek" for covered employees. *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 31 (2014). The FLSA's protections do not apply to independent contractors.

In 1968, thirty years after passage of the FLSA, the Pennsylvania General Assembly enacted the PMWA. In describing the PMWA's purpose, the General Assembly found that employees "are not as a class on a level of equality in bargaining with their employers in regard to minimum fair wage standards, and 'freedom of contract' as applied to their relations with their employers is illusory." 43 P.S. § 333.101. Regarding the Commonwealth's ability to address such issues, the General Assembly "did not mince words in stating its purpose and fervently indicating its intent to use the Commonwealth's police power to increase employee wages." *Chevalier v. Gen. Nutrition Centers, Inc.,* 220 A.3d 1038, 1055 (Pa. 2019). Indeed, the General Assembly concluded that:

> [t]he evils of unreasonable and unfair wages as they affect some employes employed in the Commonwealth of Pennsylvania are such as to render imperative the exercise of the police power of the Commonwealth for the protection of industry and of the employes employed therein and of the public interest of the community at large.

43 P.S. § 333.101.

At the time of the PMWA's enactment, the General Assembly was undoubtedly aware of the FLSA, and chose not to unilaterally adopt identical language from its federal counterpart. Critically, the PMWA and FLSA differ in their definitions of "employer," 43 P.S. § 333.103(g); 29 U.S.C. § 203(d), and "employee," 43 P.S. § 333.103(h); 29 U.S.C. § 203(e). Specifically, the FLSA's definition of "employee" includes "any individual employed by an employer,"

followed by several enumerated exceptions, 29 U.S.C. § 203(e)(2)-(5), whereas the PMWA definition broadly encompasses "any individual employed by an employer," and does not identically incorporate the FLSA's "employee" definition exceptions, 43 P.S. § 333.103(h).

Additionally, the FLSA does not define "occupation," while the PMWA broadly defines it as "any industry, trade, business, service, or employment or class or group thereof in which individuals are gainfully employed." 43 P.S. § 333.103(e). The PMWA further defines "gratuities," 43 P.S. § 333.103(i), while the FLSA merely defines a "tipped employee," 29 U.S.C. § 203(t). Finally, the PMWA incorporates the FLSA definition of "wages," 29 U.S.C. § 203(m)(2), but expands upon it, providing a description of compensation due, and stipulating that tips are the property of the employee and may not be "surrendered to the employer to be used as wages to satisfy the requirement to pay the current hourly minimum rate in effect." 43 P.S. § 333.103(d). Neither the PMWA, nor the FLSA, provide definitions for independent contractor.

### B. The objective of the PMWA was to provide broader minimum wage and overtime protections than that of the FLSA

Given the strong statement of the PMWA's purpose, the General Assembly clearly believed that Pennsylvanians required greater protection than the provisions of the FLSA. The FLSA set out to "establish[] only a national floor under which wage protections cannot drop." *Chevalier*, 220 A.3d at 1055 (quoting *Bayada*

*Nurses, Inc. v. Com. of Pa. Dep't of Lab. & Indus.*, 8 A.3d 866, 883 (Pa. 2010));
*see also Verderame v. Radioshack Corp.*, 31 F. Supp. 3d 702, 709 (E.D. Pa. 2014)
(citing *Pacific Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1425 (9th Cir.
1990)). The FLSA was not meant to "establish absolute uniformity in minimum
wage and overtime standards nationwide." *Aubry*, 918 F.2d at 1425; *see* 29 U.S.C.
§ 218(a) (recognizing that the FLSA permits states to enact laws providing for
greater protection). And Congress and the Pennsylvania General Assembly have
since taken different paths with respect to their statutes.[6]

The General Assembly explicitly found that some employees "employed in
some occupations in the Commonwealth" were earning "wages unreasonably low
and not fairly commensurate with the value of the services rendered," despite the
existence of the FLSA. 43 P.S. § 333.101. This state of affairs, the General
Assembly declared, "[was] contrary to public interest," and that "public policy
command[ed] its regulation." *Id.* Indeed, the General Assembly understood that it
was "unreasonable and unfair wages" that "threatens the stability of the economy,"
by "reduc[ing] the purchasing power of [] workers" and creating "a serious form of
unfair competition" between employers.  *Id.* Likewise, the General Assembly

---

[6] For example, the General Assembly twice acted to raise the Commonwealth's
minimum wage under the PMWA, both times in the absence of Congressional
action. *See* Act of Dec. 15, 1988, Pub. L. 1232 (codified at 43 P.S. § 333.104); Act
of July 9, 2006, Pub. L. 1077 (codified at 43 P.S. § 333.104).

sought to grant further protections regarding employees' right to wages that have

been earned and wrongfully withheld by their employer. 43 P.S. §§ 260.1, *et seq*.

The Supreme Court of Pennsylvania has directly recognized that states retain

"the authority to enact more beneficial wage and hour laws than those provided in

the FLSA," and that this "strong public policy favoring employee protections" is

reflected in the PMWA. *Chevalier*, 220 A.3d at 1055. Thus, there are key

distinctions between Pennsylvania law and the FLSA, wherein state law provides

for more protections for workers.

### C. The "materially distinct" language in the PMWA has led the Pennsylvania Supreme Court to interpret the PMWA differently than the FLSA

In addition to the differing scope and objectives of the FLSA and the

PMWA, the language of the PMWA is "materially distinct" from that of the FLSA,

*Bayada,* 8 A.3d at 882, and has been found to provide more protections to

employees in the Commonwealth.

In recognition of the differences in operative language between the FLSA

and the PMWA, the Supreme Court of Pennsylvania expressly rejected the

proposition that the FLSA and the PMWA "mirror each other in all respects and

must always be interpreted similarly." *Heimbach v. Amazon.com., Inc.,* 255 A.3d

191, 202 n.11 (Pa. 2021). In *Heimbach,* our Supreme Court reaffirmed its

commitment to interpreting the PMWA consistent with the General Assembly's

declared policy objectives, rather than rigidly following the "interpretation of similarly applicable provisions of the federal FLSA." *Id.* at 201.

Critically, that court also clarified an earlier opinion, *Pa. Dep't of Lab. & Indus. v. Stuber,* 822 A.2d 870 (Pa. Cmwlth. 2003), *aff'd* 859 A.2d 1253 (Pa. 2004).[7] It declared that,"[t]o the extent that our *per curiam* affirmance of *Stuber* on the basis of the Commonwealth Court's opinion may be read as an endorsement of the principle that the PMWA and federal FLSA mirror each other in all respects and must always be interpreted similarly, we disavow such a reading." *Id.* at 202 n.11.

All told, the Supreme Court explicitly held that, because the FLSA "specifically permits states 'to enact more beneficial wage and hour laws' than provided by the FLSA," it is axiomatic that "[t]he FLSA thus 'establishes only a national floor under which wage protections cannot drop[.]'" *Id.* at 201 (quoting *Bayada,* 8 A.3d at 883; *Chevalier,* 220 A.3d at 1055). After a careful analysis of the ways in which the text and objectives of the PMWA differ from the FLSA, the court declared that the PMWA must be interpreted "in accordance with its own

---

[7] The Pennsylvania Supreme Court's "entry of an order of *per curiam* affirmance on the basis of the lower court's opinion . . . means that [it agrees] with the lower court's rationale employed in reaching its final disposition." *Commw. v. Tilghman,* 673 A.2d 898, 904 (Pa. 1996). In doing so, the Pennsylvania Supreme Court adopted the reasoning of the Commonwealth Court's opinion without providing any additional analysis.

specific terms" as accompanied by "the relevant Department of Labor and Industry regulations." *Id.* at 202.

Even prior to *Heimbach*, the Supreme Court of Pennsylvania expressed that the PMWA is distinct from the FLSA. In one case, the court concluded that home health aides who provided "domestic services" in private homes through a third-party staffing agency, rather than directly through the household, were covered by the "more generous protections" of the PMWA, even though exempted from the FLSA. *Bayada,* 8 A.3d at 882-83. "[I]t is not mandated that state regulation be read identically to, or *in pari materia* with, the federal regulatory scheme." *Id.* at 883. In another case, the court declined to adopt the federal "Fluctuating Work Week" Method ("FWW Method") used under the FLSA to calculate overtime compensation for salaried employees under the PMWA. *Chevalier,* 220 A.3d at 1038. The General Assembly and the Pennsylvania Department of Labor & Industry declined to include language in the PMWA mirroring the FWW Method, and therefore adopted a different method. *Chevalier*, 220 A.3d at 1039-40, 1058-59. This is because the PMWA's objective is to effectuate the "strong public policy favoring employee protection." *Id.* at 1055.

Pennsylvania jurisprudence is clear: courts need not defer to or be guided by the FLSA in every respect when presiding over claims pursued under the PMWA. As Pennsylvania's highest court proclaimed several times over, the PMWA's

protections exceed the FLSA. And one example of this, according to the

Pennsylvania Supreme Court, is that the PMWA instills a presumption of

employment status. This holding by Pennsylvania's highest court interpreting

Pennsylvania law should have directed the District Court's reasoning.

Unfortunately, it did not.

### III.    Current precedent of the Supreme Court of Pennsylvania cannot be reconciled with the economic reality test

#### A. The Supreme Court of Pennsylvania concluded the PMWA has a presumption of employment not found in the FLSA

The District Court was correct that the Pennsylvania Supreme Court long

ago held that the economic reality test would guide PMWA claims. *Stuber,* 822

A.2d at 871. But the District Court erred when it disregarded the Pennsylvania high

court's attendant determination that the PMWA creates a rebuttable presumption

that an individual is an employee. *Id.* at 873 n.5 ("Moreover, under both the Act

and our state unemployment law, there is a statutory presumption of an

employment relationship that the employer must overcome.") The District Court

viewed this portion of the *Stuber* decision as mere "passing references" to a

presumption, and questioned whether that court was even referring to the PMWA

in its footnote. *Razak v. Uber Techs, Inc.,* 2024 WL 2831805, *10 (E.D. Pa. June 4,

2024). But if the Pennsylvania Supreme Court was in fact referring to only the

Unemployment Compensation Law, it would not have carefully explained that

"*both* the Act *and* [the] state unemployment law" carry a rebuttable presumption. *Stuber,* 822 A.2d at 873 n.5 (emphasis added). Indeed, all mentions of "the Act" throughout the Supreme Court's opinion refer to the PMWA, eliminating any doubt about what statute that court was referencing. The District Court's skepticism about the Pennsylvania Supreme Court's determination is therefore unfounded.

It is also troubling that the District Court gave no weight to the fact that Pennsylvania's Department of Labor & Industry—the commonwealth agency charged with implementing and enforcing the PMWA—agreed that there is a presumption under the PMWA that the individual is an employee, which the employer must rebut. *Stuber*, 822 A.2d at 871. Since *Stuber,* the Pennsylvania Department of Labor & Industry has not issued any regulation or guidance instructing that the PMWA does not establish a presumption of employment.[8] To the contrary, the Department has invoked the presumption of employment in proceedings examining whether a worker was properly classified as an independent contractor. *See, e.g.,* Brief of Intervenor-Respondent Pa. Dep't of Lab.

---

[8] Also, although the Department did not oppose the economic reality test at the time *Stuber* was decided, it has not since issued any regulation formally incorporating the economic reality test, as promulgated by the United States Department of Labor, into the PMWA. The Department's silence in this regard can be viewed as a rejection of the federal standard. *Chevalier*, 220 A.3d at 1059 (concluding the Department's inaction was an intentional rejection of federal regulations implementing identical overtime provisions of the FLSA).

& Indus., *Babich Plumbing v. Pa. Prevailing Wage Appeals Bd.* (Pa. Cmwlth.) (No. 476 C.D. 2008), 2008 WL 7119878 (explaining that the employer did not overcome the presumption that its workers were employees under the PMWA).

Also illustrative is that the Pennsylvania General Assembly has not passed any legislation to overrule *Stuber's* presumption. In fact, in the years since *Stuber* was decided, the General Assembly and the Department of Labor & Industry have both endeavored to advance worker protections in the Commonwealth by passing legislation and making legislative recommendations, respectively, that institute a presumption of employment in Pennsylvania's labor and employment laws.

The District Court observed that, in the twenty years since *Stuber*, no court conducting the economic reality test under the PMWA has done so from a presumption of employment. *Razak,* 2024 WL 2831805, *11. But that no identifiable court has done so does not grant the District Court license to ignore interpretations of state law by the Supreme Court of Pennsylvania. And, indeed, until the District Court's decision below, no court interpreting the PMWA after *Stuber* has concluded that the statute does *not* infer a presumption of employment. If the District Court had doubts about *Stuber* and the PMWA's presumption, it should have afforded the Pennsylvania Supreme Court the opportunity to resolve those doubts. Instead, the District Court incorrectly imposed its own view of what Pennsylvania law should be, *McKenna*, 32 F.3d at 825, disrupting the balance

18

between our dual systems of government and undermining the Commonwealth's authority to exercise its police powers in areas traditionally reserved to the states.

The Pennsylvania Supreme Court has not changed positions on the presumption of employment under the PMWA since *Stuber.* True, in *Heimbach* the Supreme Court disavowed *Stuber's* premise that the PMWA and FLSA must always be read identically, but this does not disturb its conclusion that the PMWA establishes a presumption of employment that the FLSA does not. In fact, *Heimbach* opened the door for further inquiry into what the proper independent contractor test should be under the PMWA.

## B. The FLSA's economic reality test does not comport with the PMWA's presumption of employment

There is daylight between the PMWA's presumption of employment and the design and purpose of the economic reality test. This litigation has brought that difference into focus. The resounding question, therefore, is whether the economic reality test is suitable for the PMWA's more protective presumption of employment status. The historical development and application of the economic reality test and the nature of a rebuttable presumption of employment in Pennsylvania suggest not.

In the 1940's, the United States Supreme Court created the economic reality test, establishing it as the governing analysis of whether an individual is an independent contractor or an "employee" within the FLSA's scope. *Rutherford*

19

*Food Corp. v. McComb,* 331 U.S. 722 (1947). The Court recognized that the FLSA, despite its broad definition of "employee," was "not intended to stamp all persons as employees," as there are those who "work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.,* 330 U.S. 148, 152 (1947). So in pursuit of distinguishing independent contractors from employees under the FLSA, federal courts apply the non-exhaustive multifactor economic reality analysis that ultimately considers whether, under the totality of the circumstances, a worker is economically dependent on the employer, or is in business for themselves. *Donovan v. DialAmerica Marketing, Inc.,* 757 F.2d 1376, 1382-83 (3d Cir. 1985).

Following *Rutherford*, the United States Department of Labor adopted the economic reality test, deeming it an "analysis in which there is no presumption of employee status that may be rebutted, no one factor is determinative, and all of the factors must be considered and weighed." *Employee or Independent Contractor Classification Under the Fair Labor Standards Act*, 89 Fed. Reg. 1638, 1662 (Jan. 10, 2024). Compare the economic reality test with, for example, the Department of Labor's multifactor analysis of the employment status of interns—an analysis that included a presumption of employment. *See* U.S. Dep't of Lab., *WHD Fact Sheet # 71: Internship Programs Under the Fair Labor Standards Act* (April 2010) (establishing that interns were presumed employees under the FLSA *unless* six

factors were met).[9] This demonstrates that the Department of Labor knows how such a presumption would work in a multifactor analysis. Yet, for purposes of minimum wage and overtime claims under the FLSA, the Department chose to codify the judicially created economic reality test "that reflect[s] the totality-of-the-circumstances approach that courts have taken for decades," 89 Fed. Reg. at 1670, and which does not contemplate any presumption of employment, *id.* at 1662.

Alternatively, the presumption of an employment relationship in Pennsylvania's labor and employment laws utilize straightforward classification analyses for distinguishing independent businesspersons from employees. Generally speaking, in those scenarios, an individual is presumed to be an employee unless the employer can establish otherwise. The Unemployment Compensation Law, for example, treats "'services performed by an individual for wages'" as employment "until it is proven that the individual is not subject to control and is customarily engaged in an independently established trade, occupation, profession or business." *Lowman v. Unemployment Comp. Bd. of Rev.,* 235 A.3d 278, 297 (Pa. 2020) (quoting 43 P.S. § 753(I)(2)(B)).

---

[9] The Department subsequently abandoned this standard after a majority of federal circuit courts of appeal determined that the six-factor analysis was flawed. *See, e.g., Glatt v. Fox Searchlight Pictures, Inc.,* 811 F.3d 528 (2d Cir. 2016) (establishing the primary beneficiary test for intern claims under the FLSA).

In another example, under the Construction Workplace Misclassification Act, an individual performing services in the construction industry for remuneration is an independent contractor "only if" the following three conditions are shown: 1) the individual has a written contract to perform, 2) the individual is free from control or direction over performance of the contracted services, and 3) the individual is customarily engaged in an independently established trade, occupation, profession or business. 43 P.S. § 933.3(a)(1)-(3).

Likewise, the Pennsylvania Department of Labor & Industry has long advocated for a uniform three-prong test that would classify an individual as an independent contractor only if: 1) the individual is free from control or direction over their work, both under the contract of service and in fact; 2) the individual's work is outside the usual course of business of the employer, and 3) the individual is customarily engaged in an independently established trade, occupation, profession, or business. *See* Christopher Hallock, Deputy Sec'y, Pa. Dep't of Lab. & Indus., Written Testimony, Pa. House Lab. & Indus. Comm., Hearing on Worker Misclassification (June 11, 2024) (available at https://tinyurl.com/2j5c6khw). Legislation introduced by the Pennsylvania General Assembly heeded the Department's recommendation, providing criteria for independent contractor status that would institute a nearly identical three-prong test. H.B. 2411, 208th Gen. Assemb., Reg. Sess. (Pa. 2024).

Each of these classification analyses demonstrate why the multifactor economic reality test, where each factor is assigned equal weight and none is dispositive alone, is not suitable for determining whether a worker is an independent contractor under the more rigid presumptive employment framework. The presumption under the PMWA does not align with the long line of cases applying the economic reality test under the FLSA, or the United States Department of Labor's regulations adopting the test.[10] That no court has meaningfully applied a presumption of employment while conducting the economic reality test under the PMWA since *Stuber* is not evidence that the presumption does not exist. Rather, it is a side effect of the fact that the economic reality test is not the proper test to use for a presumption of employment from the start. The District Court did not deal seriously with this issue, since it simply disagreed with the Pennsylvania Supreme Court's determination that the PMWA has a presumption of employment.

Given the developments in Pennsylvania's labor and employment laws since *Stuber*, Plaintiffs-Appellants soundly argue that the Pennsylvania Supreme Court may conclude that the economic reality test is not the appropriate classification

---

[10] There are instances under the FLSA where the burden shifts to the employer to establish that the employee is exempt from its coverage, however. For example, employers bear the burden of proving an employee is exempt from overtime compensation. *Clews v. Cnty. of Schuylkill*, 12 F.4th 353, 359 (3d Cir. 2021).

standard to assess PMWA claims. The Commonwealth does not disagree. The

Pennsylvania Supreme Court should be given the opportunity to reconcile this

discrepancy and determine what independent contractor classification analysis the

PMWA commands.

## IV. This Court should certify the unsettled question concerning the proper classification standard under the PMWA to the Pennsylvania Supreme Court

This Court can avoid speculating as to how the Pennsylvania Supreme Court

would resolve the issues of state law in this case by petitioning the Pennsylvania

Supreme Court directly to certify the following question:

> Does the Pennsylvania Minimum Wage Act establish a rebuttable presumption of an employment relationship that the employer must overcome, and if so, what independent contractor classification standard is the most appropriate method to overcome that presumption?

Certification of this legal question is appropriate here. Pennsylvania Rule of

Appellate Procedure 3341(a) permits this Court, either *sua sponte* or upon motion

by a party, to file a petition for certification of a question of state law with the

Prothonotary of the Supreme Court. *See also* 3d Cir. L.A.R. Misc. 110.1

("Certification of Questions of State Law"). The Pennsylvania Supreme Court will

not grant certification unless: 1) "all facts material to the question of law to be

determined are undisputed"; 2) "the question of law is one that the petitioning

court has not previously decided"; and 3) special and important reasons warrant

certification. Pa. R. App. P. 3341(c). As to the third requirement, Rule 3341

provides three factors for which the Supreme Court may accept certification. Pa. R. App. P. 3341(c)(1)-(3). Each of these enumerated factors are also satisfied in this case.

*First*, there are no disputes over facts material to the question of law in this case, because the question of whether the economic reality test applies to PMWA claims is a threshold legal determination that will drive the outcome of this case. *Second,* the question of law to be certified is one that this Court has not already decided. Although it has been the case that the economic reality test guides PMWA claims, it remains undecided whether that test is the proper analysis even though the PMWA carries a presumption of employment, and the FLSA and economic reality test do not. This issue has resulted in conflicting decisions in other courts. *Lastly,* there are special and important reasons that the Pennsylvania Supreme Court may accept certification. Predominantly, this issue is one of substantial public importance, since employees and employers in Pennsylvania will be impacted by the way Pennsylvania's labor and employment laws are construed in the courts. Secondarily, federal courts applying an employment classification standard under the PMWA that conflicts with a decision by Pennsylvania's highest court risks undermining the remedial objectives of the PMWA, and offends traditional considerations of federalism.

Finally, this Court recognizes that "certifying a question is appropriate if we determine that we cannot predict how a state court would rule." *United States v. Defreitas*, 29 F.4th 135, 141 (3d Cir. 2022). Rather than engage in speculative exercises, this Court should permit the Pennsylvania Supreme Court to have the ultimate say about the reach and application of Pennsylvania law.

## CONCLUSION

This Court should vacate the District Court's decision and instruct the District Court to remand the PMWA claims to state court, or, in the alternative, this Court should petition for certification of the aforementioned question of Pennsylvania law to the Pennsylvania Supreme Court.

January 10, 2025                    Respectfully submitted,

                                   MICHELLE HENRY
                                   Attorney General
                                   Commonwealth of Pennsylvania

                                   ELIZABETH SCHNEIDER
                                   Chief Deputy Attorney General

                                   /s/ *Ryan W. Sypniewski*
                                   RYAN W. SYPNIEWSKI
                                   Deputy Attorney General
                                   KRISTEN M. BENTZ
                                   Deputy Attorney General
                                   Pennsylvania Office of Attorney General
                                   1600 Arch Street, Suite 300
                                   Philadelphia, PA 19103
                                   (215) 560-1260
                                   eschneider@attorneygeneral.gov

## CERTIFICATE OF COMPLIANCE

I, Ryan W. Sypniewski, hereby certify that:

1. I am a member of the bar of this Court;

2. The text of the electronic version of this brief is identical to the text of the paper copies;

3. Microsoft Defender Antivirus Security intelligence version 1.421.1296.0, a virus detection program, was run on the file and no virus was detected; and

4. This brief contains 5,980 words and therefore complies with Federal Rules of Appellate Procedure 29(a)(4) and 32(a)(7)(B). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

/s/ *Ryan W. Sypniewski*

## CERTIFICATE OF SERVICE

I, Ryan W. Sypniewski, hereby certify that a copy of this *amicus* brief has been served on all counsel of record using the Court's CM/ECF system.

I further certify that ten hard copies of this brief were sent by first class mail to the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

*/s/ Ryan W. Sypniewski*