No. 24-2638

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

ALI RAZAK, et al.,

*Plaintiffs-Appellants*,

v.

UBER TECHNOLOGIES, INC., et al.,

*Defendants-Appellees*.

---

## BRIEF OF *AMICUS CURIAE* PENNSYLVANIA CHAMBER OF BUSINESS AND INDUSTRY IN SUPPORT OF DEFENDANTS-APPELLEES UBER TECHNOLOGIES, INC. AND GEGEN LLC

---

Casey Alan Coyle, Esquire (No. 307712)
Michael Libuser, Esquire (No. 332676)
Francesca Iovino, Esquire (No. 324229)
BABST, CALLAND, CLEMENTS AND
ZOMNIR, P.C.
409 N. 2nd Street, Suite 201
Harrisburg, PA 17101
*Attorneys for Amicus Curiae Pennsylvania
Chamber of Business and Industry*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1.1, *Amicus Curiae* the Pennsylvania Chamber of Business and Industry ("PA Chamber") discloses that it is a nonprofit, tax-exempt organization incorporated in the Commonwealth of Pennsylvania. The PA Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in it.

## RULE 29 STATEMENTS

PA Chamber files this *amicus* brief with the consent of all parties. *See* Fed. R. App. P. 29(a)(2). No party or party's counsel authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting the brief. No person other than *amicus* and its counsel contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E).

# **TABLE OF CONTENTS**

STATEMENT OF INTEREST OF *AMICUS CURIAE*...............................................1

SUMMARY OF ARGUMENT .............................................................................2

ARGUMENT .......................................................................................................4

I.    This Court Should Not Certify the Issue to the Pennsylvania Supreme Court ........................................................................................................4

    A.    Standard for Certification.....................................................................4

    B.    Rule 3341 of the Pennsylvania Rules of Appellate Procedure Precludes Certification Because This Court Has Previously Decided the Question of What Standard Applies to Determine a Worker's Status Under the PMWA and WPCL.............................................................................5

    C.    Even Assuming, *Arguendo*, That Rule 3341 Allows for Certification Where This Court Has Already Spoken on the Issue, the Policy Arguments Advanced by Appellants and Their *Amicus* Do Not Implicate the "Special and Important" Reasons for Certification ........7

        1.    It is well established that the economic realities test applies to determine the classification of a worker under the PMWA and WPCL.......................................................................................7

        2.    Pennsylvania precedent has not wavered in applying the economic realities test to worker classification. .........................9

        3.    The District Court's faithful adherence to precedent and the law-of-the-case doctrine does not raise federalism concerns. .........10

        4.    Court decisions in New Jersey and California are outliers; the virtual national consensus is that changes to worker classification should be made by legislative bodies, not the courts................11

        5.    The competing views of gig workers on their classification underscores the fact that Appellants' recourse, if any, is with the Legislature...............................................................................16

II.    Nor Should This Court Vacate the District Court's Opinion Regarding the State Law Claims ............................................................................................19

CONCLUSION ........................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                  **Page(s)**

*Allegheny Gen. Hosp. v. NLRB*,
    608 F.2d 965 (3d Cir. 1979) .............................................................. 11

*Arizona v. California*,
    460 U.S. 605 (1983) ......................................................................... 12

*Carpenter v. Pepperidge Farm, Inc.*,
    No. 23-2372, 2024 WL 2103257 (3d Cir. May 10, 2024) ................................. 8

*Commonwealth v. Stuber*,
    822 A.2d 870 (Pa. Commw. Ct. 2003) .................................... 6, 10, 11

*Donovan v. Dialamerica Mktg., Inc.*,
    757 F.2d 1376 (3d Cir. 1985) ......................................................... 11

*Dynamex Operations W. v. Superior Court*,
    416 P.3d 1 (Cal. 2018) ............................................................... *passim*

*Hargrove v. Sleepy's, L.L.C.*,
    106 A.3d 449 (N.J. Sup. Ct. 2015) ............................................. 12, 16

*Heimbach v. Amazon.com, Inc.* (*In re Amazon.com, Inc., Fulfillment Ctr. Fair
Labor Stds. Act (FLSA)*,
    255 A.3d 191 (Pa. 2021) ...................................................................... 9

*Karns v. Shanahan*,
    879 F.3d 504 (3d Cir. 2018) ............................................................... 12

*Lowman v. Unemployment Comp. Bd. of Review*,
    235 A.3d 278 (Pa. 2020) ...................................................................... 9

*Naylor v. Twp. of Hellam*,
    773 A.2d 770 (Pa. 2001) ....................................................................... 3

*Program Admin. Servs. v. Dauphin Cnty. Gen. Auth.*,
    928 A.2d 1013 (Pa. 2007) ................................................................... 2

*Razak v. Uber Techs., Inc.*,
    951 F.3d 137 (3d Cir. 2020) ........................................................ 6-7, 7, 8

*Rogers v. Lyft, Inc.*,
    452 F. Supp. 3d 904 (N.D. Cal. 2020) .............................................. 16

*St. Margaret Mem'l Hosp. v. NLRB*,
    991 F.2d 1146 (3d Cir. 1993) ...................................................... 11-12

*Verma v. 3001 Castor, Inc.*,
    937 F.3d 221 (3d Cir. 2019) ........................................................... 6, 8

*Weaver v. Harpster*,
    975 A.2d 555 (Pa. 2009) ................................................................. 2-3

*Williams v. Jani-King of Phila. Inc.*,
    837 F.3d 314 (3d Cir. 2016) .......................................................... 7, 8

**Statutes**

Ala. Code § 25-4-10 .................................................................... 13, 15

Alaska Stat. § 23.20.525 .................................................................. 13

Alaska Stat. § 28.23.080 .................................................................. 13

Ariz. Rev. Stat. § 23-1603 ............................................................... 13

Ark. Code Ann. § 23-13-719 ............................................................ 13

Cal. Lab. Code § 2775 ..................................................................... 13

Cal. Bus. & Prof. Code § 7451 ........................................................ 13

Conn. Gen. Stat. Ann. § 31-222 ....................................................... 13

Del. Code Ann. 2, § 1911 ................................................................. 13

Fla. Stat. § 25.2137 ......................................................................... 13

Fla. Stat. § 451.02 ........................................................................... 13

Ga. Code Ann. § 34-8-35 ................................................................. 13

Ind. Code Ann., 29 U.S.C. §§ 22-1-63, 8-2 ..................................... 13

Ind. Code § 22-4-8-1 ....................................................................... 13

Iowa Code Ann. § 93.2 ................................................................. 13

Kan. Stat. Ann. § 8-2722 ............................................................ 13

Ky. Rev. Stat. Ann. § 336.137 .................................................... 13

Mass. Gen. Laws ch. 149, § 148B .............................................. 13

Miss. Code Ann. §§ 77-8-1, 77-8-21 ........................................ 13

Mo. Ann. Stat. § 387.414 ........................................................... 13

N.D. Cent. Code § 39-34-03.1 ................................................... 13

N.H. Rev. Stat. Ann. § 376-A:20 ............................................... 13

Neb. Rev. Stat. Ann. § 48-1229 ................................................. 13

N.J. Stat. § 43:21-19(i)(6) .......................................................... 16

N.J. Stat. § 43:21-19(i)(6)(A) .................................................... 13

Ohio Rev. Code Ann. § 4925.10 ................................................ 13

S.D. Codified Laws §§ 60-1-7, 60-1-8 ...................................... 13

Tex. Admin. Code § 815 ............................................................. 13

Tenn. Code Ann. § 50-8-102 ...................................................... 13

Tex. Occ. Code Ann. § 2402.113 ............................................... 13

Utah Code Ann. § 13-51-103 ................................................ 13, 14

Vt. Stat. Ann. tit. 21, § 1301 ..................................................... 13

W. Va. Code § 17-29-11 ............................................................. 13

Wash. Rev. Code § 49.46.300 .................................................... 13

Wash. Rev. Code § 50.04.140 .................................................... 13

Wyo. Stat. Ann. § 31-20-110 ..................................................... 13

29 U.S.C. §§ 201–219 .................................................................. 6

43 Pa. Stat. § 260.1-260.45 ..................................................... 3

43 Pa. Stat. § 402 ..................................................................... 9

43 Pa. Stat. § 751-919 .............................................................. 9

43 Pa. Stat. § 333.101-333.115 ................................................ 3

820 Ill. Comp. Stat. Ann. 115/2 .............................................. 13

47 Okla. Stat. Ann. §1030........................................................ 13

**Rules**

Fed. R. App. P. 26.1 ................................................................... i

Fed. R. App. P. 29 ...................................................................... i

Fed. R. App. P. 32 ..................................................................... 1

Pa. R. App. P. 3341 ........................................................ 4, 5, 6, 7

Pa. Sup. Ct. IOP § 8 .................................................................. 5

3d Cir. L.A.R. 110 (2011) ......................................................... 5

3d Cir. L.A.R. 26.1.1 (2011) ...................................................... i

**Other**

Alex Halper, *Support S.B. 967—Expanding Employee Benefits*, PA CHAMBER OF BUSINESS AND INDUSTRY (Sept. 16, 2024)................................... 14, 15

Cary Lou, H. Elizabeth Peters, *New data shed light on why some workers prefer non-traditional employment*, URBAN INSTITUTE (August 23, 2018) ................. 17

Eli Tan, *Ride-Hailing Drivers in Massachusetts Win Right to Unionize*, NEW YORK TIMES (Nov. 6, 2024) ....................................................... 13

*Final Report of Joint Task Force on Misclassification of Employees*, PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY (Dec. 1, 2022) ............ 2

Freelance Forward 2023, UPWORK (Dec. 12, 2023)............................................. 16

Grace Gedye, *Court upholds California Prop. 22 in big win for gig firms like Lyft*

*and Uber*, CAL MATTERS (March 13, 2023) ...................................................... 16

Kim Glovas, *Shapiro Meets With Uber, Lyft Drivers About Problems Like Safety, Stolen Tips*, KYW NEWSRADIO (Sept. 3, 2019) .................................................. 2

Levi Sumagaysay, *Gig Companies Spent More Than $200 Million to Write Their Own Labor Law. The State Supreme Court Could Throw It Out*, CAL MATTERS (May 22, 2024)............................................................................................. 13, 14

Ryan Aument, Co-Sponsorship Memo, Portable Benefits for App-Based Worker (May 18, 2023)................................................................................................... 17

Shane McFeely and Ryan Pendell, *What Workplace Leaders Can Learn From the Real Gig Economy*, Gallup (August 16, 2018)................................................. 17

Shannon Sollitt, *A Utah Law, Designed to Help Gig Workers Earn Benefits, Gets its First Test*, THE SALT LAKE TRIBUNE (Apr. 20, 2024)................................... 14

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

The PA Chamber is the Commonwealth's largest broad-based business advocacy association, whose membership comprises close to 10,000 member businesses of all sizes—from sole proprietors to Fortune 100 companies—and industry sectors throughout Pennsylvania all of which are affected by employee classification. The PA Chamber's purpose is to provide a unified voice for businesses in the halls of the state Capitol and to advocate for job creation in Pennsylvania to lead to greater prosperity for its residents. It represents approximately 50% of the private workforce in the Commonwealth.

Since its inception in 1916, regulatory compliance has been at the forefront of the PA Chamber's mission. The members of the PA Chamber rely on its guidance to understand and easily follow the complexities of complying with state workplace rules. In furtherance of these goals, the PA Chamber has been an advocate for legislation that balances the interests of its members and Pennsylvania resident-workers. The PA Chamber recognizes the widespread effect of employee classification on multiple industries, which is why it is prudent to work with the Pennsylvania Legislature to ensure the business community perspective is known and appropriately considered as public policy is being developed.

# SUMMARY OF ARGUMENT

"[L]ean on sympathetic lawmakers." This is a direct quote from then-Pennsylvania Attorney General Josh Shapiro during a meeting with Appellant Ali Razak and other Uber and Lyft drivers in 2019. Kim Glovas, *Shapiro Meets With Uber, Lyft Drivers About Problems Like Safety, Stolen Tips*, KYW NEWSRADIO (Sept. 3, 2019). The drivers appealed to AG Shapiro to change rules for independent contractors, but AG Shapiro emphasized that it is up to the Legislature to do so, stating: "Part of this process that we can work on together, how can we go back to the legislature, now that this system [*i.e.*, the gig economy] has been in place for a few years and say 'these are a few things that we have to correct.'" *Id*; *see also Final Report of Joint Task Force on Misclassification of Employees*, PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY (Dec. 1, 2022) (discussing recommendations to the General Assembly on considerations relevant to classifying employees).

AG Shapiro was correct in his assessment, because as the Pennsylvania Supreme Court has said time and time again, "it is the Legislature's chief function to set public policy and the court's roles to enforce that policy, subject to constitutional limitations." *Program Admin. Servs., Inc. v. Dauphin Cnty. Gen. Auth.*, 928 A.2d 1013, 1017–18 (Pa. 2007); *see also Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009) ("[T]he power of the courts to declare pronouncements of public policy is sharply restricted. Rather, it is for the legislature to formulate the public

2

policies of the Commonwealth." (citation omitted)); *see generally Naylor v. Hellam Twp.*, 773 A.2d 770, 777 (Pa. 2001) (recognizing General Assembly's superior ability to examine social policy issues and determine legal standards so as to balance competing concerns).

Besides the fact that AG Shapiro is now Governor Shapiro, no pertinent facts have changed since 2019—including the relevant provisions of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§333.101–333.115 (the "PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§260.1–260.45 (the "WPCL"). Thus, the question of whether Pennsylvania should change rules for independent contractors was and still remains an issue for the Legislature to decide.

Against this backdrop, Appellants and *Amicus Curiae* the former Attorney General of the Commonwealth of Pennsylvania Michelle Henry (the "Former AG")[1] urge this Court to certify a question to the Pennsylvania Supreme Court regarding the classification of so-called "gig workers"[2] under the PMWA and/or WPCL in lieu of deciding the merits of this appeal. (Appellants' Br. at 16–21 (contending that the Pennsylvania Supreme Court "should decide what standards govern employment

---

[1] The Former AG filed the *amicus* brief in the instant matter just days before the Honorable Dave Sunday succeeded her as the Attorney General of the Commonwealth of Pennsylvania.

[2] *See*, *e.g.*, "Gig Worker," Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/gig%20worker (defining "gig worker" as "a person who works temporary jobs typically in the service sector as an independent contractor or freelancer").

status under the PMWA and WPCL"); Former AG's Br. at 24–26 (maintaining that the Pennsylvania Supreme Court should decide whether the PMWA "establish[es] a rebuttable presumption of an employment relationship that the employer must overcome, and if so, what independent contractor classification standard is the most appropriate method to overcome that presumption").)

But certification is prohibited under the Pennsylvania Rule of Appellate Procedure 3341, because this Court has previously decided the question of what standard applies to determine a worker's status under the PMWA and WPCL. Even assuming, *arguendo*, that Rule 3341 allows for certification where this Court has already spoken on the issue, the policy arguments advanced by Appellants and the Former AG do not implicate the "special and important" grounds for certification.

Accordingly, this Court should decline Appellants' and the Former AG's invitation to certify a question to the Pennsylvania Supreme Court and affirm the District Court's dismissal of this case with prejudice.

## **ARGUMENT**

### **I.    This Court Should Not Certify the Issue to the Pennsylvania Supreme Court**

#### **A.    Standard for Certification**

The Third Circuit Local Appellate Rules allows this Court to certify a question of state law to the state's highest court if two conditions are met: (1) the question arises "under the laws of that state which will control the outcome of [the] case";

and (2) the state's highest court has a procedure for accepting certified questions from this Court.  3d Cir. L.A.R. 110.1 (2011).

The Pennsylvania Rules of Appellate Procedure allow the Pennsylvania Supreme Court to accept certified questions of Pennsylvania law from this Court where there are "special and important reasons thereof."  Pa.R.A.P. 3341(a)(2), (c); *see* Pa. Sup. Ct. IOP § 8(A).  Such reasons include a question of law that is "one of first impression" and "of such public importance," a question of law "with respect to which there are conflicting decisions in other courts," and a question of law concerning an "unsettled issue" of statutory interpretation.   Pa.R.A.P. 3341(c).  Importantly, however, certification is only proper if, *inter alia*, "the question of law is one that the petitioning court has not previously decided."  *Id.*

**B.    Rule 3341 of the Pennsylvania Rules of Appellate Procedure Precludes Certification Because This Court Has Previously Decided the Question of What Standard Applies to Determine a Worker's Status Under the PMWA and WPCL**

In urging for their requested relief, Appellants purport to cite the applicable standard for certification.  (Appellants' Br. at 16–17.)  But Appellants ignore the plain language of Pennsylvania Rule of Appellate Procedure 3341—specifically, the unambiguous requirement that "[t]he Supreme Court shall not accept certification unless all facts material to the question of law to be determined are undisputed, *and the question of law is one that the petitioning court has not previously decided*."  Pa.R.A.P. 3341(c) (emphasis added).  This oversight is fatal to Appellants' request

for certification because, as correctly explained by Appellees, "[t]his Court previously decided the question of what standard applies to determine a worker's status under the PMWA and WPCL." (Appellees' Br. at 21–22.)

For instance, in *Verma v. 3001 Castor, Inc.*, this Court stated that it uses the six-factor economic realities test "to determine whether a worker is an 'employee' or an 'independent contractor' under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"), adding: "Pennsylvania courts use the same test under the PMWA." 937 F.3d 221, 229 (3d. Cir. 2019) (citing *Pa. Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct.), *aff'd sub nom Commonwealth v. Stuber*, 859 A.2d 1253 (Pa. 2004) (*per curiam*)). This Court similarly noted in a prior appeal involving the same parties that, "[a]lthough Plaintiffs' case includes claims under the PMWA, Pennsylvania state courts have looked to federal law regarding the FLSA for guidance in applying the PMWA." *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 142 (3d Cir. 2020) (citing *Stuber*, 822 A.2d at 873). This Court then proceeded to apply the economic realities test. *Razak*, 951 F.3d at 144–48. By way of another example, in *Williams v. Jani-King of Philadelphia, Inc.*, this Court employed a ten-factor test to interpret the meaning of an "employee" under the WPCL that parallels the economic realities test, 837 F.3d 314, 320 (3d Cir. 2016)—a point which Appellants concede. (Appellants' Br. at 18 n.3.)

Having already decided what test applies to determine a worker's status under

the PMWA and WPCL,[3] Rule 3341 plainly precludes certification of the sought-after questions.  On this basis alone, this Court should deny Appellants' and the Former AG's request for certification.

> **C.    Even Assuming, *Arguendo*, That Rule 3341 Allows for Certification Where This Court Has Already Spoken on the Issue, the Policy Arguments Advanced by Appellants and Their *Amicus* Do Not Implicate the "Special and Important" Reasons for Certification**

Even assuming, *arguendo*, that Rule 3341 allows for certification where this Court has already spoken on the issue, this case does not implicate the "special and important" grounds for certification.  This is because Appellants and their *amicus* offer nothing more than policy arguments to support their requested relief—and such arguments are better suited for the Legislature than the judiciary.

> **1.    It is well established that the economic realities test applies to determine the classification of a worker under the PMWA and WPCL.**

Appellants and the Former AG offer multiple reasons for granting certification, all of which lack merit.

They first argue that certification is warranted because the questions of who bears the burden of proof and which classification test applies to workers under the

---

[3] While the Former AG disagrees with this contention, asserting that "the question of law to be certified is one that this Court has not already decided," it admits in *the very next sentence* that "it has been the case that the economic reality test guides PMWA claims." (Former AG's Br. at 25.)  Thus, the distinction that the Former AG is trying to draw is non-existent.

7

PMWA and WPCL is "unsettled" and "undecided." (Appellants' Br. at 17; Former AG's Br. at 25.) But Appellants and the Former AG are both wrong because, as noted above, this Court previously decided the question of what standard applies to determine a worker's status under the PMWA and WPCL. *Williams*, 837 F.3d at 320; *Verma*, 937 F.3d at 229; *Razak*, 951 F.3d at 144–48; *see also Carpenter v. Pepperidge Farm, Inc.*, No. 23-2372, 2024 WL 2103257, at *1 (3d Cir. May 10, 2024) ("The WPCL does not define 'employee,' so Pennsylvania courts have applied a ten-factor test used to determine employment status under similar state statutes.").

Evidently aware of this caselaw, Appellants maintain that "much has changed" since this Court's prior decisions. (Appellants' Br. at 18.) To support its assertion, Appellants point to the Pennsylvania Supreme Court's decisions in *Lowman v. UCBR*, 235 A.3d 278 (Pa. 2020), and *Heimbach v. Amazon.com, Inc.*, 255 A.3d 191 (3d Cir. 2021). (Appellants' Br. at 18–19.) But Appellants overstate the import of both cases.

*Lowman* involved the Pennsylvania Unemployment Compensation Law, codified at 43 P.S. §§751–919.10. 255 A.3d at 281 ("In this case of first impression, the Court is asked to decide the appropriate test to determine whether a claimant who is otherwise entitled to receive unemployment compensation benefits due to a separation from employment becomes ineligible for those benefits as a result of being self-employed pursuant to Section 402(h) of the Unemployment

8

Compensation Law[.]").  Thus, *Lowman* does not call into question this Court's decisional law regarding the standard to determine a worker's classification under the PMWA or the WPCL.

The same is true of *Heimbach*.  While it concerned the PMWA, *Heimbach* did not "open the door" for further inquiry into the proper classification test, as the Former AG contends.  (Former AG's Br. at 19.)  Rather, *Heimbach* merely clarified that, under *Stuber*, "where the statutory provisions of the enactments parallel each other, federal decisions construing the federal FLSA *may* be considered in interpreting the PMWA."  255 A.3d at 202 n.11.  *Heimbach* therefore does not undermine *Verma*, *Razak*, *Williams*, or *Carpenter* because the Legislature incorporated the FLSA's definition of "employee" directly into the PMWA, *see Stuber*, 822 A.2d at 873, indicating its intent to align with the FLSA on that issue.  If anything, *Heimbach* only reinforces the correctness of those holdings.

## 2.  Pennsylvania precedent has not wavered in applying the economic realities test to worker classification.

The Former AG also argues that certification is proper because there have been "conflicting decisions in other courts" regarding the rebuttable presumption of employment.  (Former AG's Br. at 25.)  The Former AG, however, does not identify these alleged inconsistent rulings.  (*Id.*)  To the extent that the Former AG is referring to an alleged conflict between the District Court's decision below and the Pennsylvania Supreme Court's opinion in *Stuber* (*id.* at 16–17), she is incorrect.

*Stuber* did not upend the economic reality test as the Former AG claims. Rather, *Stuber's* passing reference of a presumption was based on an erroneous agreement between the parties that the employer carried the burden of proof to disprove employment status. *Stuber*, 822 A.2d at 872 ("[B]oth sides agree . . . that there is a presumption that the individual is an employee."). Thus, *Stuber* did not purport to abrogate or otherwise alter the economic reality test for determining worker classification under the PMWA.

> **3.     The District Court's faithful adherence to precedent and the law-of-the-case doctrine does not raise federalism concerns.**

The Former AG further avers that certification is appropriate because the District Court "imposed its own interpretation of Pennsylvania law in contravention of the construction and application provided by Pennsylvania's highest court, infringing on the boundaries of federalism." (Former AG's Br. at 4; *accord id*. at 8–9, 25.) But the Former AG's contention is baseless.

The District Court submitted specific questions to the jury on both the six "economic reality" factors that guide the "misclassification determination" under the FLSA and PMWA and the ten factors that guide a similar holistic analysis under the WPCL. (App. 7.) In doing so, the District Court correctly noted that the former instruction was compelled by this Court's ruling in *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376 (3d Cir. 1985), while the latter instruction was endorsed by this Court's decision in *Williams*. (App. 7.) Thus, the District Court

faithfully applied this Court's precedent, which is exactly what the doctrine of *stare decisis* commands. *See, e.g.*, *Allegheny Gen. Hosp. v. N.L.R.B.*, 608 F.2d 965, 969 (3d Cir. 1979) ("The essence of the common law doctrine of precedent or Stare decisis is that the rule of the case creates a binding legal precept."), *abrogated on other grounds as recognized by St. Margaret Mem. Hosp. v. N.L.R.B.*, 991 F.2d 1146 (3d Cir. 1993); *see also Karns v. Shanahan*, 879 F.3d 504, 524 (3d Cir. 2018) (Roth, J., dissenting) ("The doctrine of stare decisis is simple: Like cases should be decided alike.").

And in applying the economic reality test to Appellants' PMWA claim, the District Court also adhered to the law-of-the-case doctrine since this Court applied that exact standard in a prior appeal. *See, e.g.*, *Arizona v. California*, 460 U.S. 605, 618 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

> **4.** **Court decisions in New Jersey and California are outliers; the virtual national consensus is that changes to worker classification should be made by legislative bodies, not the courts.**

Appellants speculate that the Pennsylvania Supreme Court "will likely" adopt so-called "ABC Test," in lieu of the economic reality test, for determining a worker's classification under the PMWA and WPCL, and therefore, this too weighs in favor of certification. (Appellants' Br. at 19–21 (citing *Hargrove v. Sleepy's, LLC*, 106 A.3d 449 (N.J. 2015), and *Dynamex Operations West, Inc. v. Superior Court*, 416

11

P.3d 1 (Cal. 2018)).)

But *Hargrove* and *Dynamex* are both outliers—the virtual national consensus is that changes to worker classification should be made by legislative bodies, *not* the courts.  For example, a few state Legislatures chose to adopt a version of the ABC Test generally applicable in the wage and hour context.  *See* Cal. Lab. Code §2775(b)(1)(A–C) (California); M.G.L. c. 149, §148B (Massachusetts).  Some adopted a version of the ABC Test for purposes of their wage payment law, but not for purposes of minimum wage and/or overtime.  *See*, *e.g.*, 820 Ill. Comp. Stat. Ann 115/2 (Illinois); Neb. Rev. Stat. Ann. §48–1229 (Nebraska).  Others adopted a version of the ABC Test for purposes of unemployment compensation, *see*, *e.g.*, C.G.S.A. §31-222(B)(I–III) (Connecticut); Ind. Code §22-4-8-1(b)(1–3) (Indiana); N.J. Stat. §43:21-19(i)(6)(A) (New Jersey); Vt. Stat. Ann. tit. 21 §1301(6)(B)(i–iii) (Vermont); Wash. Rev. Code §50.04.140(1)(a–c) (Washington), and for purposes of workers' compensation, *see*, *e.g.*, Alaska Stat. §23.20.525(8)(A–C).

Critically, in each of these examples, it was the legislative branch—not the judiciary—that made the policy decision about whether and in what context to adopt an ABC Test.  Notably, moreover, many state legislatures have adopted statutes to specifically address the classification for individuals working, respectively, as a "marketplace contractor," a "transportation network company [] driver," or an "app-

based driver."[4]

Still, other states and municipalities have adopted other legislative changes for gig workers.  For instance, in Massachusetts, voters approved a ballot measure allowing drivers to nominally form a union without officially changing their designated status as independent contractors.  *See* Eli Tan, *Ride-Hailing Drivers in Massachusetts Win Right to Unionize*, NEW YORK TIMES (Nov. 6, 2024).  Similarly, in California, voters passed Proposition 22, which allows app-based workers to become eligible for certain benefits such as guaranteed weekly earnings of 120% of minimum wage, health care stipends, and occupational-accident and accidental-death insurance while still maintaining their classification as independent contractors.  *See* Levi Sumagaysay, *Gig Companies Spent More Than $200 Million to Write Their Own Labor Law. The State Supreme Court Could Throw It Out*, CAL

---

[4] *See* Ala. Code §25-4-10(26)(c) (Alabama); Alaska Stat. §28.23.080 (Alaska); Ariz. Rev. Stat. §23-1603 (Arizona); Ark. Code §23-13-719 (Arkansas); Cal. Bus. & Prof. Code §7451 (California); 2 Del. C. §1911 (Delaware); Fla. Stat. §451.02 (Florida); Ga. Code §34-8-35(n)(17) (Georgia); Ind. Code Ann. §§22-1-63, 8-2.1-19.1-4 (Indiana); Iowa Code Ann. §93.2 (Iowa); K.S.A. §8-2722 (Kansas); Ky. Rev. Stat. Ann. §336.137 (Kentucky); Mich. Comp. L. §25.2137 (Michigan); Miss. Code §§77-8-1, 77-8-21 (Mississippi); Mo. Ann. Stat. §387.414 (Missouri); N.H. Rev. Stat. §376-A:20 (New Hampshire); N.D. Cent. Code §39-34-03.1 (North Dakota); Ohio Rev. Code §4925.10 (Ohio); 47 Okla. Stat. Ann. §1030 (Oklahoma); S.D. Codified Laws §§60-1-7, 60-1-8 (South Dakota); Tenn. Code Ann. §50-8-102 (Tennessee); Tex. Occ. Code §2402.113 and Tex. Admin. Code §815.134 (Texas); Utah Code Ann. §13-51-103 (Utah); Wash. Rev. Code §49.46.300 (Washington); W. Va. Code §17-29-11 (West Virginia); Wyo. Stat. §31-20-110 (Wyoming) (for Workers' Compensation purposes only).

MATTERS (May 22, 2024).

By way of another example, Utah has passed legislation (Utah Code Ann. §13-51-103) enacting the creation of portable benefit accounts for independent contractors and classifies app-based drivers as independent contractors. Shannon Sollitt, *A Utah Law, Designed to Help Gig Workers Earn Benefits, Gets its First Test*, THE SALT LAKE TRIBUNE (Apr. 20, 2024). Likewise, Alabama and Georgia both classify app-based drivers as independent contractors, Ala. Code §25-4-10(26); Ga. Code §34-8-35(n)(17), and the Alabama State Senate recently introduced a portable benefit accounts bill for them, S.B. 86, Ala. Gen. Assemb., 2025 Reg. Sess. (Ala. 2025.)

Significantly, Pennsylvania has considered similar legislation. The App-Based Workers Benefits and Protections Act—better known as S.B. 967—was introduced during the 2023–2024 Legislative session. It sought to establish portable benefits and protections for app-based workers by forming form a fund, financed by app-based companies like DoorDash, Lyft, Instacart, and Uber, to collectively provide benefits for those Pennsylvanians with whom they contract and would follow the individual even if they moved to a new app. S.B. 967, 2023–2024 Reg. Sess. (Pa. 2024). The PA Chamber supported the passage of this bill and remains hopeful that the General Assembly will enact a similar version in the near future. Alex Halper, *Support S.B. 967—Expanding Employee Benefits*, PA CHAMBER OF

BUSINESS AND INDUSTRY (Sept. 16, 2024).

The myriad laws, bills, and ballot measures referenced above illustrate that legislation is the proper vehicle to make changes to worker classification. *Cf. Rodgers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 911 (N.D. Cal. 2020) (noting that, while "reasonable minds can differ on whether gig workers for companies like Lyft should be treated like traditional employees," the "California Legislature has now spoken on the policy question").

*Hargrove* and *Dynamex* do not undermine this proposition.  In *Hargrove*, the New Jersey Supreme Court held that the ABC Test was the proper test for determining whether an individual was an employee or independent contractor for purposes of a wage claim.  106 A.3d at 463.  In so doing, the New Jersey Supreme Court relied on the New Jersey Department of Labor's regulation, which was adopted to implement New Jersey's Wage and Hour Law.  *Id.* at 458.  That regulation specifically adopted the ABC Test to determine whether an individual was an employee or an independent contractor.  N.J. Stat. §43:21-19(i)(6).  There is no similar regulation in Pennsylvania.

*Dynamex* is likewise inapposite.  There, the California Supreme Court relied upon a wage order—a "constitutionally authorized, quasi-legislative regulation[]," 416 P.3d at 6 n.3—to adopt the ABC Test, *id.* at 42.  No such mechanism exists under Pennsylvania law.  However, it bears noting that the California Legislature

still took action on worker classification after the *Dynamex* decision. In 2019, it enacted Assembly Bill 5, which classified workers as employees or independent contractors, requiring employers to use the ABC Test to determine worker classification. A.B. 5, 2019–2020 Reg. Sess. (Cal. 2019). Then, a year later, voters passed Proposition 22. Grace Gedye, *Court upholds California Prop. 22 in big win for gig firms like Lyft and Uber*, CAL MATTERS (March 13, 2023). Thus, the post-script for *Dynamex* reinforces the point that changes to worker classification should be made through legislative or similar means.

> **5.    The competing views of gig workers on their classification underscores the fact that Appellants' recourse, if any, is with the Legislature.**

The views of gig workers are not uniform. While Appellants and the Former AG portray them as a desolate lot dependent upon "government funded assistance programs" (Former AG's Br. at 3), data has shown that the vast majority of gig workers choose to engage in this type of work to obtain multiple sources of income and that they have a positive outlook regarding the gig economy landscape when it comes to four areas: career development, income, future job prospects, and personal growth. Freelance Forward 2023, UPWORK (Dec. 12, 2023). The study also found that 66% of individuals felt more mentally engaged and challenged by their independent contractor work—and 68% expressed a greater sense of contentment and satisfaction derived from their independent contractor work in a way that

surpassed the levels of happiness they experienced in conventional job roles. *Id.*

Statistics consistently reflect that flexibility and autonomy are the driving motivators that fuel individuals to enter the gig economy. *Id*; *see also* Cary Lou, H. Elizabeth Peters, *New data shed light on why some workers prefer non-traditional employment*, URBAN INSTITUTE (August 23, 2018) (observing that 64% of gig workers reported that they are engaged in their preferred type of work); Shane McFeely and Ryan Pendell, *What Workplace Leaders Can Learn From the Real Gig Economy*, Gallup (August 16, 2018) (finding that approximately 60% of gig workers enjoyed their autonomy and authority in the gig economy). The Co-Sponsorship Memo for the App-Based Workers Benefits and Protections Act noted this phenomenon, stating:

> More than 100,000 Pennsylvanians choose flexible work through app-based platforms like Uber, Instacart, DoorDash, and Lyft. Many of these workers, often referred to as app-based workers, choose these platforms specifically because of the flexibility and independence this type of work affords. Often, app-based workers drive or deliver in between other work obligations, family needs, or school. Many use this work to supplement other existing income.

Sen. Ryan Aument, Co-Sponsorship Memo, Portable Benefits for App-Based Worker (May 18, 2023).[5]

In other words, individuals are attracted to the gig economy *because* they want

---

[5] *Available at*: https://www.palegis.us/senate/co-sponsorship/memo?memoID=40794&document=SB967.

to be independent contractors, not employees.  They yearn for the freedom to dictate their schedules, workload, and location—and even to provide services to multiple companies—while still earning an income.

In fact, even Appellant Razak acknowledged the benefits of being an independent contractor in his testimony.  Specifically, he remarked that he had the benefit of using the vehicle that he leased to perform app-based services to and from Buffalo, New York, where he owned rental properties, and to run personal errands. (App. 934–35 (June 12, 2024 Trial Tr. 284:23–285:7).)  He also noted that he was able to "go offline" from the Uber app for extended periods of time without needing approval or permission, choose when to go online, and decide if and when he wanted to provide services through other applications.  (App. 939–40, 946 (June 13, 2024 Trial Tr. 13:17–21, 17:6–16, 41:5–9).)  Appellant Razak recognized that if he were an Uber employee, he would not be able to enjoy this type of flexibility.  (*See* App. 949 (June 13, 2024 Trial Tr. 56:5–10).)  Other Appellants similarly admitted that they were free to and in fact did work with other app-based companies, as well as other private companies, during their relationship with Uber.  (*See*, *e.g.*, ECF No. 330-1 at 5, 14–15 (citing record).)

But if Appellants were considered to be Uber employees, it can be reasonably assumed they would not have been able to, *inter alia*: (a) take significant periods of time off without permission; (b) work whenever they wanted; (c) decide the route to

18

take when they accepted a ride; (d) receive compensation per trip rather than per hour; (e) enjoy breaks at their discretion while logged into the Uber app and waiting for ride requests; (f) choose to disregard emails from Uber about such topics as "pro tips" or informing them of areas with high demand; (g) freely reject any trip request; (h) cancel rides after acceptance; and (i) importantly, work for other app-based companies at the time same. (*Id.*)

Thus, by asking this Court to classify them as "employees," or to certify the question to the Pennsylvania Supreme Court to do the same, Appellants are asking to be subject to the strict standards they wished to be free from and admittedly do not adhere to.  It is therefore evident that Appellants themselves fail to appreciate the gravity of the relief they are seeking.  Regardless, the competing views of gig workers on their classification underscores the fact that Appellants' recourse, if any, is with the Legislature.

## II.   <u>Nor Should This Court Vacate the District Court's Opinion Regarding the State Law Claims</u>

In a last-ditch effort to prolong Appellants' campaign for judicial policymaking, the Former AG asks this Court to vacate the District Court's opinion regarding the state law claims so that Appellants can pursue their state law claims in Pennsylvania state court.  (Former AG's Br. at 5–6.)  But the Former AG cites no authority for this extraordinary relief.  Moreover, while the Former AG claims that "[c]onflicting interpretations of state law between state courts and federal courts

yield untenable outcomes, creating situations where individuals denied relief in one court can jump to the other in pursuit of a more favorable outcome" (*id.* at 9), this is exactly what the Former AG is advocating for by seeking to give Appellants a third bite at the apple in Pennsylvania state court to pursue a potentially more favorable outcome.  To the contrary, Appellees deserve finality, which is what the District Court delivered after thoughtful consideration.

## <u>CONCLUSION</u>

For the foregoing reasons and those additional reasons set forth in Appellees' brief, *Amicus Curiae* the Pennsylvania Chamber of Business and Industry respectfully requests that this Court deny Appellants' and their *amicus'* request for certification and affirm the District Court's order dismissing Appellants' claims.

Respectfully submitted,

BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.

By: _____

Casey Alan Coyle, Esquire (No. 307712)
Michael Libuser, Esquire (No. 332676)
Francesca Iovino, Esquire (No. 324229)
409 N. 2nd St., Suite 201
Harrisburg, PA 17101
267-939-5832
ccoyle@babstcalland.com
fiovino@babstcalland.com
*Attorneys for Amicus Curiae Pennsylvania Chamber of Business and Industry*

Dated: March 31, 2025

## COMBINED CERTIFICATIONS

### STATEMENT OF BAR MEMBERSHIP

I, Casey A. Coyle, Esquire, am duly admitted to practice law before the United States Court of Appeals for the Third Circuit.

_____

Casey Alan Coyle, Esquire

### STATEMENT OF COMPLIANCE WITH FED. R. APP. P. 29(a)(5), 32(a)(7)(b), 32(a)(5), and 32(a)(6)

This brief was prepared on a computer using Microsoft Word 365. The font is Times New Roman, 14-point, double spaced. The word count of the body of the brief, including footnotes and point headings, as calculated by Microsoft Word 365, is 4,681 words. This brief therefore complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B)—excluding the parts of the brief exempted by Fed. R. App. P. 32(f)—as well as the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

_____

Casey Alan Coyle, Esquire

## STATEMENT OF SERVICE AND ECF FILING

I, Casey A. Coyle, hereby certify that on March 31, 2025, I electronically filed the foregoing Brief of *Amicus Curiae* Pennsylvania Chamber of Business and Industry in Support of Defendants-Appellees Uber Technologies, Inc. and Gegen LLC with the Court's ECF system. I further certify that, within five (5) days of electronic service of the foregoing, I will send seven (7) copies of the Brief of *Amicus Curiae* Pennsylvania Chamber of Business and Industry in Support of Defendants-Appellees Uber Technologies, Inc. and Gegen LLC to the Clerk of the Court for the United States Court of Appeals for the Third Circuit.

_____
Casey Alan Coyle, Esquire

## STATEMENT OF IDENTICAL COMPLIANCE BRIEFS

I, Casey A. Coyle, hereby certify that the briefs that will be sent to the to the Clerk of the Court for the United States Court of Appeals for the Third Circuit will be identical to one another and to the electronic PDF version.

_____
Casey Alan Coyle, Esquire

## STATEMENT OF VIRUS CHECK

I, Casey A. Coyle, hereby certify that a virus check was performed on this brief and that it is free from viruses.  The check was performed with Windows Security, version 1.425.350.0, on May 31, 2025.

_____

Casey Alan Coyle, Esquire